IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

| | |
|---|---|
| Carlos Gutierrez-Toledo, | Case Number: _____ |
| *Plaintiff,* | |
| v. | Ad Damnum: $15,000 + costs and fees |
| Experian Information Solutions, Inc., | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Carlos Gutierrez-Toledo**, ("Mr. Gutierrez-Toledo"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Experian Information Solutions, Inc. ("Experian")**, stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Gutierrez-Toledo against Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"), and Section 501.005, Florida Statutes.

## JURISDICTION

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, Section 501.005(16) Florida Statutes, and Section 26.012, Florida Statutes.

3. Experian is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Pursuant to Section 47.051, Florida Statutes, venue is proper in Polk County because the acts complained of were committed and / or caused by Defendant within Polk County.

## PARTIES

5. **Mr. Gutierrez-Toledo** is a natural person residing in Lakeland, Polk County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. **Experian** is an Ohio corporation, with a primary business address of **475 Anton Blvd., Costa Mesa CA 92626.**

7. Experian is registered to conduct business in the state of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

8. Experian is a nationwide **Consumer Credit Reporting Agency ("CRA")** within the meaning of 15 U.S.C. § 1681a(f), in that Experian, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

9. In or around April 2013, Mr. Gutierrez-Toledo became suddenly ill and required emergency medical treatment.

10. Mr. Gutierrez-Toledo's treatment was performed by Inphynet Physician Contracting ("Inphynet").

11. In or around October 2014, Mr. Gutierrez-Toledo again required emergency medical treatment, which was again performed by Inphynet.

12. In August 2014, Inphynet placed one account for collection with Account Resolution Services, also known as "ARS," a Florida debt collector.

13. Inphynet placed the second account for collection with ARS in November 2015.

## Impossible "Date of First Reporting" on ARS Tradelines

14. ARS reported the first account to Experian as a medical collection accounts, account number 73493903, in November 2014.

15. ARS reported the second, account number 80833708, around January 2016.

16. ARS then made new reports of both accounts each subsequent month.

17. However, when ARS made reports to Experian, ARS indicated that the date it had *first reported* the debt had changed.

18. Mr. Gutierrez-Toledo's January 30, 2018 consumer disclosure indicates that both ARS tradelines were "first reported" in January 2018. **SEE PLAINTIFF'S EXHIBIT A.**

19. Mr. Gutierrez-Toledo's June 14, 2018 consumer disclosure indicates the very same tradelines were "first reported" in June 2018. **SEE PLAINTIFF'S EXHIBIT B.**

20. A tradeline appearing on a credit history in January 2018 could not be "first" reported in June 2018.

21. Moreover, the date of first reporting *cannot* change, as the date when something *first* occurs does not change.

22. The FICO Model II ("**Model II Score**") credit score utilized by Experian in conjunction with mortgage applications heavily weights negatively whether a consumer has any collection accounts reporting which were *first* reported recently.

23. A recently reported collection tradeline which was first reported in 2014 would have a minimal effect on the consumer's credit score.

24. However, a tradeline *first* reported very recently (*i.e.* within the last 30 days) has a strong negative effect on the Model II Score since it suggests that the debt had only very recently

been escalated to include the involvement of a debt collector and is a much stronger indicator of current, active financial problems.

25. Experian's inclusion of the false, constantly updating, dates of first reporting of the ARS tradelines thus had a material negative impact on Mr. Gutierrez-Toledo's credit scores.

### Failure to Conduct a Reasonable Investigation

26. In July 2018, Mr. Gutierrez-Toledo disputed the accuracy of ARS's tradelines to Experian.

27. Upon receipt of Mr. Gutierrez-Toledo's dispute, Experian was required to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the item from the file. *See* 15 U.S.C. § 1681i(a)(1)(A).

28. A CRA's liability under § 1681i(a) rests on "whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

29. Experian sent ARS two Automated Consumer Dispute Verification ("ACDV") requests through a system known as e-OSCAR.

30. ARS returned the ACDVs, confirming that its tradelines were correct and required no modification, update or deletion, other than to update the "date first reported" to July 2018. **SEE PLAINTIFF'S EXHIBIT C.**

31. Upon receipt of the ACDVs, Experian utilized a second automated system to verify the basic personal information contained in the ACDV, such as name and address, against Experian's own records.

32. Upon information and belief, the furnishing of ACDVs to a data furnisher and the automated verification of the personal information contained in the responses make up the total extent of investigation performed by Experian upon receipt of most consumer disputes.

33. Experian conducted no human review of its own into Mr. Gutierrez-Toledo's dispute.

34. Experian continued to include the ARS tradelines in reports it sold regarding Mr. Gutierrez-Toledo.

35. Courts have long recognized that it is inherently unreasonable for a CRA to exclusively rely on the furnisher of information's investigations only. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("merely reporting whatever information the creditor furnished (is) not reasonable. . . " [since] "the agency itself clearly bears at least some burden of evaluation."

36. The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)

37. Experian accepted as "accurate" information furnished by ARS which is logically impossible – that of a changing "date first reported" – a fact which it could easily ascertain from its own records.

38. Experian knew that the information was wrong, since its disclosures to Mr. Mr. Gutierrez-Toledo showed a balance history dating back to February 2017.

39. Experian thus failed to conduct a reasonable investigation into Mr. Gutierrez-Toledo's dispute. A reasonable investigation would have concluded that the ARS tradelines were inaccurate and required modification or deletion.

40. Further, Mr. Gutierrez-Toledo's November 2018 Experian disclosure shows the ARS tradelines as being "first reported" in September 2018, but that the tradelines were disputed in July 2018. **SEE PLAINTIFF'S EXHIBIT C.**

41. Logically, a tradeline first reported in September 2018 could not have been disputed to Experian two months prior, since the reporting of an account is necessary prior to a consumer disputing it.

42. Records from Experian show it sold at least thirteen (13) reports on Mr. Gutierrez-Toledo containing the false "date first reported" ARS information.

### Violation of Fla. Stat. 501.005(17)

43. Mr. Gutierrez-Toledo obtained consumer disclosures from Experian in January and June 2018.

44. Pursuant to Section 501.005(17), Florida Statutes, any written disclosure by a consumer credit reporting agency, pursuant to 15 U.S.C. § 1681g, to a resident of Florida must include a written summary of rights, which must be in a substantially similar form to the disclosure attached as **PLAINTIFF'S EXHIBIT D.**

45. The required disclosures in Section 501.005(17)(b), Florida Statutes, provided in capital letters above, must be disclosed in "12-point boldface type."

46. The disclosures provided by Experian to Mr. Gutierrez-Toledo did not contain a disclosure of his rights as required by Section 501.005(17), Florida Statutes.

47. In lieu of providing the required disclosures, Experian provides a link to a separate webpage that contains a summary of certain rights pursuant to Florida law. **SEE PLAINTIFF'S EXHIBIT E.**

48. The link provided by Experian is inconspicuous, in small font and grouped at the end of the disclosure with links to other state's consumer rights.

49. Following the link leads to a separate webpage containing a disclosure of certain consumer rights.

50. The separate webpage fails to disclose the language provided for in Section 501.005(17)(f), Florida Statutes - that the consumer has the right to bring a civil action against anyone, including a consumer reporting agency, who fails to comply with the provisions of Section 501.005, Florida Statutes, which governs the placing of a consumer report security freeze on one's consumer report. **SEE PLAINTIFF'S EXHIBIT F.**

51. Experian's failure to include the consumer rights required by Florida law in its consumer disclosures is intentional. Experian instead includes a link, in small font at the end of the consumer's disclosure, to make the disclosures less accessible and increase the likelihood that the consumer will not read their rights provided by Florida law.

52. Similarly, Experian's failure to disclose in the separate webpage that the consumer has the right to bring a civil action for anyone who fails to comply with Section 501.005, Florida Statutes, is intentional.

53. On information and belief, Experian omits the required language so as to decrease the likelihood that a consumer will freeze his report, which costs Experian time and money to process, and reducing net revenue which Experian could otherwise earn.

54. Mr. Gutierrez-Toledo has hired this law firm to represent him in this matter and is obligated to pay its reasonable fees.

## COUNT I
### VIOLATIONS OF THE FCRA

55. Mr. Gutierrez-Toledo incorporates paragraphs 1 – 54 as if fully stated herein.

56. Experian violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy by including information in reports sold about Mr. Gutierrez-Toledo indicating that the ARS tradelines had been "first" reported in the month that the report was sold, when Experian knew this could not be true since, among other reasons stated herein, the date an account is "first" reported cannot change.

57. Experian's conduct violated 15 U.S.C. § **1681i(a)(1)(A)** in that Experian failed to conduct a reasonable reinvestigation regarding the disputed ARS tradelines since it failed to make any independent evaluation of Mr. Gutierrez-Toledo's dispute. A reasonable investigation would have revealed that the ARS tradelines contained false dates of first reporting which continuously changed and should have been static.

58. Experian has been sued by other consumers for virtually the same issues with false dates of first reporting of ARS tradelines, and, despite being informed of this issue, has yet to correct the problem.

59. Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Mr. Gutierrez-Toledo.

60. As a result of its conduct, Experian is liable to Mr. Carlos Gutierrez-Toledo pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE**, Mr. Carlos Gutierrez-Toledo respectfully requests this Honorable Court enter judgment against Experian for:

    a.    The greater of statutory damages of $1,000.00 per incident (for a total of **$13,000**), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Carlos Gutierrez-Toledo's actual

    damages for loss of credit opportunities and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

  b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

  c. Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF SECTION 501.005, FLORIDA STATUTES

61. Mr. Gutierrez-Toledo adopts and incorporates paragraphs 1 – 54 as if fully stated herein.

62. Experian violated Section 501.005(17) Florida Statutes when it provided a written disclosure to a Florida resident, Mr. Gutierrez-Toledo, pursuant to 15 U.S.C. § 1681g, which failed to provide a written summary of all rights the consumer has under Section 501.005 Florida Statutes on two (2) separate occasions. Specifically, Experian failed to provide any summary at all of the consumer's rights in its actual disclosure, instead providing a link in small font at the end of the disclosure to a separate webpage. The separate webpage failed to disclose that the consumer has the right to bring a civil action for anyone who fails to comply with Section 501.005, Florida Statutes.

63. Experian's conduct is willful and intentional and engaged in primarily to reduce the number of consumers who request a security freeze on their credit reports by burying their right to request a security freeze in fine print and behind a web URL, instead of a prominent disclosure making it plainly obvious, as required by Florida law.

64. Experian is therefore liable for the above-stated violations of Section 501.005, Florida Statutes and Mr. Gutierrez-Toledo is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE**, Mr. Gutierrez-Toledo respectfully requests that this Honorable Court enter judgment against Experian for:

a. Damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to Section 501.005(16), Florida Statutes;

b. Injunctive relief, prohibiting Experian from continuing to omit the required consumer rights in its consumer disclosures;

c. Reasonable costs and attorneys' fees pursuant to Section 501.005(16), Florida Statutes; and,

d. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Gutierrez-Toledo demands a jury trial on all issues so triable.

Respectfully submitted on February 27, 2019, by:

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar # 119168
Seraph Legal, P.A.
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
(813) 567-1230
BGeiger@SeraphLegal.com
Counsel for Plaintiff

## EXHIBIT LIST

| | |
|---|---|
| A | Plaintiff's Experian Consumer Disclosure January 30, 2018, Excerpt |
| B | Plaintiff's Experian Consumer Disclosure June 14, 2018, Excerpt |
| C | Plaintiff's Experian Consumer Disclosure November 5, 2018, Excerpt |
| D | Disclosures required by Section 501.005(17), Florida Statutes |
| E | Plaintiff's Experian Consumer Disclosure June 14, 2018, Notification of Rights Excerpt |
| F | Disclosures Provided by Experian via Separate Webpage |

# EXHIBIT A
# Plaintiff's Experian Consumer Disclosure January 30, 2018, Excerpt

1/30/2018　　　　　　　　　　　　　　　　Experian - Access your credit report

CARLOS GUTIERREZ | Report number 1662-9519-50 | January 30, 2018 | Print | Close window

---

| | | | | $644 past due as of Jan 2018. |
|---|---|---|---|---|
| 1843 HARRISON PKWY STE 100 SUNRISE, FL 33323 *No phone number available* Address identification number 0071103569 | **Type** Collection **Terms** 1 Months **On record until** Jan 2020 | **Credit limit or original amount** $563 **High balance** $0 **Monthly payment** $0 **Recent payment amount** $0 | **Date of status** 01/2018 **First reported** 01/2018 **Responsibility** Individual | **Comment** Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act). |
| Original creditor INPHYNET SOUTH BROWARD INC. | | | | |

**Account history**

2018
Jan
C

Collection as of Jan 2018

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Dec 2017: $563 / No data / No data / No data
Nov 2017: $563 / No data / No data / No data
Oct 2017: $563 / No data / No data / No data
Sep 2017: $563 / No data / No data / No data
Aug 2017: $563 / No data / No data / No data
Jul 2017: $563 / No data / No data / $0
Jun 2017: $563 / No data / No data / No data
May 2017: $563 / No data / No data / No data
Apr 2017: $563 / No data / No data / No data
Mar 2017: $563 / No data / No data / No data
Feb 2017: $563 / No data / No data / No data
The original amount of this account was $563

---

| **Account name** ARS ACCOUNT RESOLUTION S | **Account number** 80833708 | **Recent balance** $644 as of 01/06/2018 | **Date opened** 11/2015 | **Status** Collection account. $644 past due as of Jan 2018. |
|---|---|---|---|---|
| 1843 HARRISON PKWY STE 100 SUNRISE, FL 33323 *No phone number available* Address identification number 0071103569 | **Type** Collection **Terms** 1 Months **On record until** Jul 2021 | **Credit limit or original amount** $644 **High balance** $0 **Monthly payment** $0 **Recent payment amount** $0 | **Date of status** 01/2018 **First reported** 01/2018 **Responsibility** Individual | **Comment** Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act). |
| Original creditor INPHYNET SOUTH BROWARD INC. | | | | |

**Account history**

2018
Jan
C

Collection as of Jan 2018

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Dec 2017: $644 / No data / No data / No data
Nov 2017: $644 / No data / No data / No data
Oct 2017: $644 / No data / No data / No data
Sep 2017: $644 / No data / No data / No data
Aug 2017: $644 / No data / No data / No data
Jul 2017: $644 / No data / No data / $0
Jun 2017: $644 / No data / No data / No data
May 2017: $644 / No data / No data / No data
Apr 2017: $644 / No data / No data / No data
Mar 2017: $644 / No data / No data / No data
Feb 2017: $644 / No data / No data / No data

2/9

# EXHIBIT B
# Plaintiff's Experian Consumer Disclosure June 14, 2018, Excerpt

No Public Record items appear on your report.

| | | | | |
|---|---|---|---|---|
| **Account name**<br>ARS ACCOUNT RESOLUTION S | **Account number**<br>73493903 | **Recent balance**<br>$583 as of 06/02/2018 | **Date opened**<br>08/2014 | **Status**<br>Collection account.<br>$563 past due as of Jun 2018. |
| 1643 NW 136 AVE BLD H STE 100<br>SUNRISE, FL 33323<br>No phone number available<br>Address Identification number<br>0071103569<br>Original creditor<br>INPHYNET SOUTH BROWARD INC. | **Type**<br>Collection<br>**Terms**<br>1 Months<br>**On record until**<br>Jan 2020 | **Credit limit or original amount**<br>$563<br>**High balance**<br>$0<br>**Monthly payment**<br>$0<br>**Recent payment amount**<br>$0 | **Date of status**<br>06/2018<br>**First reported**<br>06/2018<br>**Responsibility**<br>Individual | **Comment**<br>Account Information disputed by consumer (Meets requirement of the Fair Credit Reporting Act). |

**Account history**

2018
Jun
C

Collection as of Jun 2018

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
May 2018: $563 / No data / No data / No data
Apr 2018: $563 / No data / No data / No data
Mar 2018: $563 / No data / No data / No data
Feb 2018: $563 / No data / No data / No data
Jan 2018: $563 / No data / No data / No data
Dec 2017: $563 / No data / No data / No data
Nov 2017: $563 / No data / No data / No data
Oct 2017: $563 / No data / No data / No data
Sep 2017: $563 / No data / No data / No data
Aug 2017: $563 / No data / No data / No data
Jul 2017: $563 / No data / No data / $0
Jun 2017: $563 / No data / No data / No data
May 2017: $563 / No data / No data / No data
Apr 2017: $563 / No data / No data / No data
Mar 2017: $563 / No data / No data / No data
Feb 2017: $563 / No data / No data / No data
The original amount of this account was $563

# EXHIBIT B
# Plaintiff's Experian Consumer Disclosure June 14, 2018, Excerpt

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| ARS ACCOUNT RESOLUTION S | 80833708 | $644 as of 08/02/2018 | 11/2015 | Collection account. $644 past due as of Jun 2018. |

1643 NW 136 AVE BLD H STE 100
SUNRISE, FL 33323
No phone number available
Address identification number
0071103569

Original creditor
INPHYNET SOUTH BROWARD INC.

Type: Collection
Terms: 1 Months
On record until: Jul 2021

Credit limit or original amount: $644
High balance: $0
Monthly payment: $0
Recent payment amount: $0

Date of status: 06/2018
First reported: 08/2018
Responsibility: Individual

Comment
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

**Account history**

2018
Jun
C

Collection as of Jun 2018

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
May 2018: $644 / No data / No data / No data
Apr 2018: $644 / No data / No data / No data
Mar 2018: $644 / No data / No data / No data
Feb 2018: $644 / No data / No data / No data
Jan 2018: $644 / No data / No data / No data
Dec 2017: $644 / No data / No data / No data
Nov 2017: $644 / No data / No data / No data
Oct 2017: $644 / No data / No data / No data
Sep 2017: $644 / No data / No data / No data
Aug 2017: $644 / No data / No data / No data
Jul 2017: $644 / No data / No data / $0
Jun 2017: $644 / No data / No data / No data
May 2017: $644 / No data / No data / No data
Apr 2017: $644 / No data / No data / No data
Mar 2017: $644 / No data / No data / No data
Feb 2017: $644 / No data / No data / No data
The original amount of this account was $644

# EXHIBIT C
## Plaintiff's Experian Consumer Disclosure November 5, 2018, Excerpt

11/5/2018 — Experian - Access your credit report

No general personal statements appear on your report.

[ Add fraud alert ]

### Potentially negative items

No Public Record items appear on your report.

| | | | | |
|---|---|---|---|---|
| **Account name**<br>ARS ACCOUNT RESOLUTION S<br><br>1843 NW 136 AVE BLD H STE 100<br>SUNRISE, FL 33323<br>No phone number available<br>Address identification number<br>0071103569<br><br>Original creditor<br>INPHYNET S BROWARD | **Account number**<br>73493900<br><br><br>**Type**<br>Collection<br>**Terms**<br>1 Months<br><br>**On record until**<br>Jan 2020 | **Recent balance**<br>$563 as of<br>10/06/2018<br><br>**Credit limit or original amount**<br>$563<br>**High balance**<br>$0<br>**Monthly payment**<br>$0<br>**Recent payment amount**<br>$0 | **Date opened**<br>08/2014<br><br><br>**Date of status**<br>09/2018<br>**First reported**<br>09/2018<br>**Responsibility**<br>Individual | **Status**<br>Collection account.<br>$563 past due as of<br>Oct 2018.<br><br>**Comment**<br>Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).<br>**Reinvestigation information**<br>This item was updated from our processing of your dispute in Jul 2018. |

**Account history**

2018
Oct  Sep
 C    C

Collection as of Oct 2018, Sep 2018

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Sep 2018: $563 / No data / No data / No data
Aug 2018: $563 / No data / No data / No data
Jul 2018: $563 / No data / No data / No data
Jun 2018: $563 / No data / No data / No data
May 2018: $563 / No data / No data / No data
Apr 2018: $563 / No data / No data / No data
Mar 2018: $563 / No data / No data / No data
Feb 2018: $563 / No data / No data / No data
Jan 2018: $563 / No data / No data / No data
Dec 2017: $563 / No data / No data / No data
Nov 2017: $563 / No data / No data / No data
Oct 2017: $563 / No data / No data / No data
Sep 2017: $563 / No data / No data / No data
Aug 2017: $563 / No data / No data / No data
Jul 2017: $563 / No data / No data / $0
Jun 2017: $563 / No data / No data / No data
May 2017: $563 / No data / No data / No data
Apr 2017: $563 / No data / No data / No data
Mar 2017: $563 / No data / No data / No data
Feb 2017: $563 / No data / No data / No data
The original amount of this account was $563

| | | | | |
|---|---|---|---|---|
| **Account name**<br>ARS ACCOUNT RESOLUTION S<br><br>1843 NW 136 AVE BLD H STE 100<br>SUNRISE, FL 33323<br>No phone number available<br>Address identification number<br>0071103569<br><br>Original creditor<br>INPHYNET S BROWARD | **Account number**<br>60833708<br><br><br>**Type**<br>Collection<br>**Terms**<br>1 Months<br><br>**On record until**<br>Jul 2021 | **Recent balance**<br>$844 as of<br>10/06/2018<br><br>**Credit limit or original amount**<br>$844<br>**High balance**<br>$0<br>**Monthly payment**<br>$0<br>**Recent payment amount**<br>$0 | **Date opened**<br>11/2015<br><br><br>**Date of status**<br>09/2018<br>**First reported**<br>09/2018<br>**Responsibility**<br>Individual | **Status**<br>Collection account.<br>$844 past due as of<br>Oct 2018.<br><br>**Comment**<br>Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).<br>**Reinvestigation information**<br>This item was updated from our processing of your dispute in Jul 2018. |

2/8

# EXHIBIT C
## Plaintiff's Experian Consumer Disclosure November 5, 2018, Excerpt

11/5/2018        Experian - Access your credit report

**Account history**

2018
Oct  Sep
C    C

Collection as of Oct 2018, Sep 2018

Balance history

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Sep 2018: $644 / No data / No data / No data
Aug 2018: $644 / No data / No data / No data
Jul 2018: $644 / No data / No data / No data
Jun 2018: $644 / No data / No data / No data
May 2018: $644 / No data / No data / No data
Apr 2018: $644 / No data / No data / No data
Mar 2018: $644 / No data / No data / No data
Feb 2018: $644 / No data / No data / No data
Jan 2018: $644 / No data / No data / No data
Dec 2017: $644 / No data / No data / No data
Nov 2017: $644 / No data / No data / No data
Oct 2017: $644 / No data / No data / No data
Sep 2017: $644 / No data / No data / No data
Aug 2017: $644 / No data / No data / No data
Jul 2017: $644 / No data / No data / $0
Jun 2017: $644 / No data / No data / No data
May 2017: $644 / No data / No data / No data
Apr 2017: $644 / No data / No data / No data
Mar 2017: $644 / No data / No data / No data
Feb 2017: $644 / No data / No data / No data
The original amount of this account was $644



3/8

# EXHIBIT D
## Disclosures required by Section 501.005(17), Florida Statutes

(a) You have a right to place a "security freeze" on your consumer report, which will prohibit a consumer reporting agency from releasing any information in your consumer report without your express authorization. A security freeze must be requested in writing by certified mail to a consumer reporting agency. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent.

(b) YOU SHOULD BE AWARE THAT USING A SECURITY FREEZE TO CONTROL ACCESS TO THE PERSONAL AND FINANCIAL INFORMATION IN YOUR CONSUMER REPORT MAY DELAY, INTERFERE WITH, OR PROHIBIT THE TIMELY APPROVAL OF ANY SUBSEQUENT REQUEST OR APPLICATION YOU MAKE REGARDING A NEW LOAN, CREDIT, MORTGAGE, INSURANCE, GOVERNMENT SERVICES OR PAYMENTS, RENTAL HOUSING, EMPLOYMENT, INVESTMENT, LICENSE, CELLULAR PHONE, UTILITIES, DIGITAL SIGNATURE, INTERNET CREDIT CARD TRANSACTION, OR OTHER SERVICES, INCLUDING AN EXTENSION OF CREDIT AT POINT OF SALE.

(c) When you place a security freeze on your consumer report, you will be provided a personal identification number or password to use if you choose to remove the freeze on your consumer report or authorize the release of your consumer report for a designated period of time after the security freeze is in place. To provide that authorization, you must contact the consumer reporting agency and provide all of the following:

    1. The personal identification number or password.

    2. Proper identification to verify your identity.

    3. Information specifying the period of time for which the report shall be made available.

(d) A consumer reporting agency must authorize the release of your consumer report no later than 3 business days after receiving the above information.

(e) A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account, that requests information in your consumer report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

(f) You have the right to bring a civil action against anyone, including a consumer reporting agency, who fails to comply with the provisions of s. 501.005, Florida Statutes, which governs the placing of a consumer report security freeze on your consumer report.

# EXHIBIT E
# Plaintiff's Experian Consumer Disclosure June 14, 2018, Notification of Rights Excerpt

| | |
|---|---|
| c. Nonmember Insured banks, Insured State Branches of Foreign Banks, and Insured state savings associations | |
| d. Federal Credit Unions | c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br><br>d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air Carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, SW<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F St NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center - FCRA |

**Notification of Rights**
Notification of Rights for Alabama Consumers
Notification of Rights for Alaska Consumers
Notification of Rights for Arkansas Consumers
Notification of Rights for California Consumers
California Notice of Your Rights to Request and Obtain Your Credit Score
Notification of Rights for Colorado Consumers
Notification of Rights for Connecticut Consumers
Notification of Rights for Delaware Consumers
Notification of Rights for District of Columbia Consumers
Notification of Rights for Florida Consumers

# EXHIBIT F
# Disclosures Provided by Experian via Separate Webpage

How Security Freezes Work

Security freezes are designed to prevent a credit reporting company from releasing your credit report without your consent. However, you should be aware that using a security freeze to take control over who is allowed access to the personal and financial information in your file may delay, interfere with or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, insurance, government services or payments, rental housing, employment, investment, license, cellular telephone, utilities, digital signature, Internet credit card transaction or other services, including an extension of credit at point of sale.

When you place a security freeze on your file, you will be provided a personal identification number or password to use if you choose to remove the security freeze from your file or authorize the temporary release of your credit report for a specific person or period after the security freeze is in place. To provide that authorization, you must contact the reporting agency and provide all the following:

1. Sufficient identification to verify your identity.

2. Your personal identification number or password provided by the credit reporting company.

3. A statement that you choose to remove the security freeze from your file or that you authorize the reporting agency to temporarily release your consumer report. If you authorize the temporary release of your consumer report, you must name the person who is to receive your consumer report or the period for which your consumer report must be available.

A security freeze generally does not apply to circumstances in which you have an existing account relationship and a copy of your report is requested by your existing creditor or its agents or affiliates for certain types of account review, collection, fraud control or similar activities.

If you are actively seeking credit, you should understand that the procedures involved in lifting a security freeze may slow your own applications for credit. You should plan ahead and lift a freeze, either completely if you are shopping around, or specifically for a certain creditor, a few days before actually applying for new credit.

Requesting a Free Security Freeze

To request your free security freeze, visit Experian's Freeze Center or call 1 888 EXPERIAN (1 888 397 3742) and provide the required information.

Freeze My Credit File

You may also submit your request in writing to Experian Security Freeze, P.O. Box 9554, Allen, TX 75013. Written requests should include the following:

- Your full name including middle initial (and generation)

- Social Security number

# EXHIBIT F
# Disclosures Provided by Experian via Separate Webpage

- Complete addresses for the past two years
- Date of birth
- One copy of a government issued identification card, such as a driver's license, state ID card, etc.
- One copy of a utility bill, bank or insurance statement, etc.

Make sure that each copy is legible and displays your name and current mailing address and the date of issue. Send copies of any documents you wish to provide to us and always retain your original documents.

We will send you a confirmation notice once the security freeze has been added, and you will be given a personal identification number (PIN) that will be required in order to remove the freeze temporarily (in order to apply for credit or for any transaction that requires that another party access your personal credit report) or permanently. You may select your own PIN when placing a security freeze on your file. If you would like to create a single-use PIN to be used by a certain credit grantor, log on to Experian's Freeze Center.

Additional Services

Credit Lock: An additional protection or alternative to a security freeze is to Lock your Experian credit file. Experian CreditLock allows you to easily and instantly control access to your Experian credit report in real time with one click without having to remember your PIN.

Identity Theft Protection: To see other ways in which Experian can help keep your credit and identity secure, learn about our Identity Theft Protection solutions.

Free Dark Web Scan: Get a one-time scan for your Social Security Number, Email and Phone Number, that also includes a free Experian Credit Report every 30 days on sign in, and with free credit monitoring and alerts.

Free Child ID Scan: See if your child has a credit file and a social security number that has potentially been compromised with a free child identity theft scan.